UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| STANLEY GLENN JONES, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 2:15-cv-00007 |
| | ) | Judge Sharp |
| v. | ) | |
| CAROLYN W. COLVIN Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

# MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 13). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

## I. INTRODUCTION

Plaintiff filed an application for Title II benefits on November 4, 2011 and for SSI on November 30, 2011, alleging a disability onset date of August 31, 2011. Plaintiff had an initial hearing before an Administrative Law Judge ("ALJ") on May 15, 2013. The ALJ signed a Notice of Decision-Unfavorable, which was mailed to Plaintiff on July 12, 2013. Plaintiff timely

filed an appeal with the Appeals Council, which issued a written notice of denial on November 26, 2014, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on July 12, 2013. (AR p. 20). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since August 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severed impairments: multilevel degenerative disc disease of the lumbar spine, right shoulder impingement syndrome with probably rotator cuff tear and hypertension (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can only frequently perform postural activities and is precluded from pushing or pulling with his right upper extremity. Furthermore, he is limited to no more than occasional overhead reaching with his upper extremity.

6. The claimant is capable of performing past relevant work as a production supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, since August 31, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR pp. 25-34).

## III. REVIEW OF THE RECORD

The following summary of the evidence of record is taken from Plaintiff's brief, Docket Entry No. 13-1 at pp. 2-4 (emphasis in original):

**Hearing Testimony and Other Evidence**

**a. <u>Non-Medical Evidence</u>**:
Stanley Jones, Plaintiff-Appellant, alleges that he was **an almost 50** year-old claimant at the date of alleged onset on August 31, 2011 due to **multiple lumbar spine impairments and severe shoulder impingement syndrome.** (Tr. 170-179). He has a high school education and no further vocational training and has work[ed] as a factory worker/assembly line worker, cable lineman and farm hand.

**b. <u>Medical Evidence</u>**
Mr. Jones was working on a local farm, in a job where he performed constant heavy lifting, when he suffered an onset of severe lower back pain, which caused him to first have trouble walking. He was seen in the CMC ER on July 25, 2011, (Tr. 243-252) with **severe tenderness to the lumbar spine, decreased range of motion to the lumbar spine and paravertebral muscles with muscle spasms.**

He was referred to a local primary care physician, on August 8, 2011, (Tr. 263-264), where he was having **weakness of the legs, decreased range of motion with flexion, extension, lateral flexion, and rotation as well as moderate lumbar tenderness**. He continued to work for a few weeks, but in late August 2011 (onset date August 31, 2011), he suffered a right shoulder injury and on exam on September 12, 2011, (Tr. 260-262), **he could not raise his arm above his head.** By January 2012, he was having **severe shoulder pain and was diagnosed with impingement syndrome.** (Tr. 282-284). He continued to have history of falls, weakness of both legs, and decreased lumbar range of motion. He eventually was diagnosed with **lumbar radiculopathy**. (Tr. 306-331). He also began to have chest pain, which was later attributed to a side effect of the baclofen, (his anti-inflammatory med).

Mr. Jones was consultatively examined on January 9, 2012, (Tr. 275-279), by Dr. Donita Keown, consultative examiner for DDS, where he had lumbar ***spine x-rays which indicate that he has spondylolisthesis of L5 onto S1 with bilateral pars defect*** (L5 has collapsed onto S1 causing the pars to separate or even fracture). Dr. Keown, to have a **stooped posture, waddling side to side gait to keep from moving his irritated back**. [sic] He had absent reflexes on the right lower extremity and severely decreased measured range of motion at only 65 degrees on dorsiflexion and only left/right lateral flexion of 15 degrees and only 10 degrees extension. He had ***bilaterally positive straight leg raises at 60 degrees both seated and supine.*** He could not properly tandem step, lift on his toes or heel walk because of his irritated back. Dr. Keown noted that he gave **good effort** in

3

the exam, and regarding the shoulder, she also noted a **<u>suspected rotator cuff tear</u>** and severely decreased right shoulder range of motion, pain and a 2 cm atrophy of the right shoulder versus left, as well as crepitus on the left shoulder.

Since that time, Mr. Jones has only been able to treat conservatively but has been consistent in his treatment. (Tr. 306-336). He has noted **antalgic gait with severe limping**, and pain to both his back and lower extremities. He is unable to balance, has poor reflexes and very limited range of motion lumbar spine with lower leg radiculopathy as well as virtually no effective use of the right shoulder/upper arm.

A few months after the hearing, the claimant suffered a fall on September 1, 2013 that sent him to the ER, (Tr. 345-368), where he received x-rays and a CT of the lumbar spine. He has multiple levels of impairment to the L-spine and T-spine, which we contend have been present and were objectively confirmed in prior studies and supported by these most recent studies.

He has a grade II spondylolisthesis at L5-S1 with advanced degenerative disc disease at L5-S1 and degenerative facet hypertrophy at this level resulting in moderate bilateral neural foraminal narrowing. (Tr. 354-358). At L4-5, he has a broad based disc bulge effacing the ventral thecal sac and contacting the lateral transversing L5 nerve roots. In addition, he has anterior wedging at T11, indicative of an old fracture. ***<u>He was ordered by the ER physician to ambulate only with a cane for assistance.</u>*** (Tr. 362).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*,

402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only

includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the

Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. Plaintiff's Assertion of Error

Plaintiff argues that the ALJ erred by failing to find that (1) his spinal disorder meets or equals Listing 1.04(A) in 20 CFR Part 404, Subpart P, Appendix 1 and further failed to properly assess the objective test results and subjective symptoms in the record; and (2) improperly evaluated his residual functional capacity and improperly assigned controlling weight to non-examining and non-treating physicians. (Docket Entry No. 13-1). Plaintiff contends that the Commissioner's decision should be reversed, or in the alternative, remanded for further consideration. (*Id*. at 5).

Sentence four of 42 U.S.C. § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertions of errors are addressed below.

*1. The ALJ's Consideration of Listing 1.04*

Plaintiff argues that the ALJ erred by failing to find that his impairments would meet or medically equal Listing 1.04(A), found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff asserts the evidence "shows that Mr. Jones satisfies all of the criteria of Listing 1.04(A) as he has a spinal disorder at several levels as shown by CT and other objective testing." (Docket Entry No. 13-1 at 7).[1]

In order for Plaintiff to meet the criteria of Listing 1.04(A), he must show that he has a disorder of the spine (*i.e.,* degenerative disc disease) with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated

---

[1] Plaintiff makes the additional argument that new evidence was submitted and not considered. However, this evidence appears to be from September 2013. (*Id*. at p. 7). The ALJ signed the decision in July 2013. (AR at p. 20). The evidence Plaintiff refers to was submitted to the Appeals Council and was not before the ALJ. The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996)) ("[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* In the instant case, the evidence submitted was not relevant to the decision before the ALJ since it consists of treatment after July 2013.

muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A). It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.,* 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing.").

> In making his finding, the ALJ gave the following analysis:
>
> There is no medical evidence of the nerve root or spinal cord compromise, as required by Listing 1.04, and therefore the additional components required are not necessary to discuss. The medical record does not consist of medically acceptable imaging that demonstrate any compromise of the nerve root or spinal cord. . .[t]he records show that the claimant can ambulate effectively without an assistive device. Moreover, during the consultative examination he walked unassisted despite demonstrating a "waddling" gait (Exhibit 3F at 3). . . No cane or assistive device has been recommended or prescribed by any treating physicians within the submitted evidence. The undersigned has reviewed the record and finds the requirements of Listing 1.04 have not been met as the medical record fails to demonstrate the requisite determination of spinal function. The claimant has some alleged limitations in this area due to his back pain; however, as discussed in more detail below, these allegations do not rise to listing level.

(AR at pp. 26-27). If the ALJ's findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm. Of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court therefore finds that substantial evidence supports the ALJ's determination that Plaintiff's condition does not meet Listing 1.04.

*2. The ALJ's Evaluation of the Residual Functional Capacity*

Here, Plaintiff argues that the ALJ erroneously accepted the findings of the non-examining and non-treating state agency physician, and his physical and mental residual functional capacity ("RFC") was not supported by substantial evidence. (Docket Entry No. 13-1 at 5). Plaintiff further argues,

> . . . the Honorable ALJ gave more weight to an non-examining/non-treating physician, Dr. Joseph Curtsinger (Tr. 107-116), who did only a cursory review of a portion of the file [], and the ALJ did not provide any further basis for her findings of a light RFC, when evidence clearly points to an RFC of less than sedentary, as provided by Dr. Keown, and upon accepted testimony of the VE.

(*Id*. at p. 6).

The residual functional capacity is the most an individual can still do despite the work related limitations that arise from their impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. However, the residual functional capacity need only include those limitations that the ALJ found credible. *See, Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155-56 (6th Cir. 2009)(citing 20 § 404.1545). Moreover, the ALJ is not required to discuss all of the evidence submitted, and his failure to cite specific evidence does not indicate that is was not considered. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (internal citation omitted)).[2]

The ALJ found that Plaintiff "has the residual functional capacity to perform light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except that he can only frequently perform postural activities and is precluded from pushing or pulling with his right upper extremity." (AR at p. 27). And furthermore, that he is "limited to no more than occasional

---

[2] Generally more weight is given to a doctor who examined the claimant, while generally even more weight is given to well-supported opinions from treating medical sources who have established a treating relationship with the claimant – non-examining physicians' opinions are also considered.. *See* 20 C.F.R. §§ 404.1527(c)(1-2) and (e), 416.927(c)(1-2) and (e). The opinions of State agency medical consultants must be considered. *See,* SSR 96-6p.

overhead reaching with his right upper extremity." (*Id*.). The ALJ made the following determinations as it related to Plaintiff's credibility:

> The evidentiary record chronicles ***no doctor visits, therapy or treatment for back pain until July 25, 2011*** (Exhibit 1F). The claimant alluded to a long standing history of lumbar pain radiating into his lower extremities. However, the objective medical evidence lacks any prior physician treatment notes or observations regarding the claimant's back troubles.
>
> \*\*\*
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible due to the absence of objective signs, diagnoses, and limitations.
>
> The undersigned finds that the claimant's subjective complaints of disabling physical limitations ***are disproportionate to the objective clinical and diagnostic medical evidence***. . . The claimant's contention regarding the nature, frequency, severity and duration of his back and shoulder pain is inconsistent with the ***delayed and sporadic*** doctor visits.
>
> Additionally, the medical evidence does not support his contention that musculoskeletal pain and residual lower extremity issues prevent him from standing or walking for extensive periods.
>
> \*\*\*
>
> In terms of his alleged debilitating shoulder troubles, the medical evidence does not support this. There is no evidence of widespread complications other than residual pain, which is consistent with the conservative treatment measures.
>
> \*\*\*
>
> His credibility is further in question in light of his self-reported denial of any alcohol use. Depending on the situation, he failed to disclose his alcohol intake. He consistently professed he was a "non-drinker" in direct contradiction to his occasional drinking as noted in the record (Exhibits 2F at 4, 3F at 2, and 6F).

(AR at pp. 28-30)(emphasis in original). As for the opinion evidence, the ALJ found the following:

> The undersigned gives little weight to the consultative examiner Dr. Donita Keown opinion [that] the claimant was limited to sedentary exertion, as this opinion[] is without substantial support from other evidence in the record. . . Some weight is given to Joseph Curtsinger, M.D., who reviewed the file and opined that despite chronic shoulder and back pain, the claimant remained able to frequently perform postural activities (Exhibit 6A). . .
>
> Little or no weight is given to pain clinic physician Richard Smith, M.D., as his opinion contains unsupported functional assessment as he has ***never treated or examined the claimant*** (Exhibit 7F). The claimant testified that he has never received care from Dr. Smith and the treatment notes confirm all visits were with the physician assistant (Exhibits 2F and 4F).

(*Id*. at pp 30-31).

Consequently, the record reflects that the ALJ considered such factors as Plaintiff's allegations to the extent they were found credible and his retained level of functioning as reflected by the evidence, medical opinions (wherein explanations were given regarding the weight of each opinion), as well as the medical evidence. The Court finds that substantial evidence supports the ALJ's determination as to Plaintiff's residual functional capacity.

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g., Longworth c. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 13).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE